May it please the court, counsel. I'm Shawn McCray representing Donald Wesley Deeks. I'd like to reserve approximately three minutes for rebuttal. Okay. Judicial minutes or your minutes? Well, judicial minutes are probably better, Your Honor. We'll see what happens. Now, you might have noticed that I have been allowing an extra minute even after they've run over, but those are all ten-minute arguments. Yours is a fifteen. That's why I was trying to reserve some time up front. Okay. There are two discrete aspects to this appeal. One is the search and seizure issues. The other is the death enhancement issue. Does the court have a preference concerning the two issues? Your choice. Then let me deal first with the search and seizure issues, primarily the so-called protective suite, which the defense maintains was really an illegal search and seizure, well, actually search of Mr. Deeks' premises. As the court will recall – Excuse me. When you do your argument, would you focus on whether you can just elide the whole thing by excising it and then the warrant, even without the upstairs portion, would still be sufficient? Certainly. So just work that into it. The defense position, Your Honor, is that this court has to look at the record that was made below. And the record that was made below simply is that the protective suite was not justified by the government's evidence and the government had the burden of proof. That, taken with the other evidence in the case, specifically the issues surrounding the defendant's consent or lack of consent to enter his premises, even if there was a finding of consent, the things that occurred within the residence, the interviews that occurred later, and the protective suite itself must all be taken in the context of the totality of the circumstances. In other words, the defense position is all of the facts are inextricably intertwined in this case and it is insufficient to simply excise the paragraph about the observations made in the upstairs closet in the master bedroom and then say the warrant is okay. We do that all the time. We do that all the time. Frank's hearings and so forth. You take out that which is what we excise. Now, your argument that it's inextricably intertwined, you have to make that argument. But I don't understand why the observations upstairs are inextricably intertwined with what was temporally and otherwise, which was what was seen downstairs and what was observed outside the house. Why are they inextricably intertwined? They're inextricably intertwined because of this particular record, because in this situation we had the officers doing an arrest of Mr. Deeks, taking him away from the house. He was on his way to the jail. And then and only then do the officers in the house make a determination that they're going to go upstairs. And remember, Your Honor, that the upstairs was unattached to the downstairs. Forget the upstairs. Let's stick with what was seen on the porch, what Mr. Deeks said, and what was observed inside the house when they went in. Just that. If we just take that, isn't that enough? What's inextricably? I'm trying to figure out your argument that it's inextricably. I know one thing then moved to the other, but the temporal nature of the search was such that you could take the last thing out. You could take it out. And then you look at it. A, B, and C were done. Is that good enough? That would be true if this had been a Franks hearing. But there was no testing of the intentionalness or intentionality and whether there was reckless disregard for the truth on the part of the applicant. That is really important here. I'm sorry. There wasn't a Franks hearing? Why wasn't there a Franks hearing? And whose fault is that? Well, it's probably my fault as trial counsel. But what happened was the discovery and the evidence presented did not raise this issue, other than a protective sweep, until the time of the hearing itself. Now, at the hearing itself, number one, it's our position, and it's set out in both the brief, the opening brief, and the reply brief, that there weren't articulable facts to support a protective sweep. Okay. So let's say you went on protective sweep. They had no reason, they didn't articulate any facts to go upstairs. They have the district court introduce the notion of preservation of evidence. I'm not sure where that comes from, but danger to the officers. So they clear the house. But there was no testimony to suggest that there was anybody upstairs that they did it. They just went upstairs. Okay. So let's take it out. Okay. Okay. So that was wrong. Okay. Now, are you saying they had no right to be in the living room at all, period? No. Okay. So now you've got what they found on the lower floor and everything else, as Judge Beyer said. Take out the upstairs stuff. They saw something in the closet. You take it all out. Okay. So is there enough to justify the follow-on based on the warrant? No. Okay. Why? And the reason for that is multiple. And please bear with me because I need to say one more thing about the upstairs, and this is why it's important, is because the testimony at the hearing, we didn't have the other officers. We didn't have Corporal Billiard. We only had Deputy Jeffords. And so that's got to be a question mark. But when we had the testimony of Detective Paul Garrison, and this is at page 107, he says when they went to the closet, the same closet that these other officers looked in, that he saw a plastic bucket located on the shelf, the same shelf that the other officers saw, six feet above the floor, and this had 35 pellets of the consistency of what they found downstairs, the cocaine. So presumably the other officers doing this protective sweep would have seen that. Number two, when we have Detective Seema testify. So what? We're taking it out. It's wrong. It shouldn't be there. But it goes to the question of whether the officers knew this, had observed this before they did the search warrant application, and didn't tell the magistrate about it. The prosecution characterizes it as a cursory search, but there's nothing in the record to support that. So you're saying that the facts afterwards demonstrate, the testimony afterwards demonstrated that the earlier testimony was false.  Is that it? That's what I'm saying, Your Honor. And Detective Seema says. Why isn't that a function? Again, as discussed, that's why you have a trial court. So you move to suppress, and you cross-examine, and this witness who didn't testify, well, that's fine. You can call that witness, bring it in, and show that the cops are liars. Well, I could, but the burden concerning the illegal searches is not the defense's burden. I'm not suggesting a shifting of burden, because that's not the issue. I mean, I understand that. The question is if you are going to say that the credibility of Officer X who testified a particular way is an issue or could be challenged, that is your burden, isn't it? I mean, I don't know. It's always the burden of the person opposing it to challenge the credibility of the witness who's offering the testimony. So I don't know how you're foreclosed from that. But that's not inextricably intertwined. That just means you want to take some evidence here and use it to impeach some earlier testimony about, or testimony about an earlier occasion, which I think that's right. But that's not the same inextricably intertwined. Obviously, I've hit a nerve with that usage of the term. And I guess I have. Well, the reason you've hit a nerve is because we have to make that finding, I would think, in order to throw out the search. Well, and usually in the law, inextricably intertwined is used in the context of things like prior bad acts. In the search and seizure context, we typically use the term totality of the circumstances. So if that's more appropriate, then we can use that term. But it is my position that the Court can't simply look at the search warrant and the search warrant affidavit in a vacuum. It's got to be looked at the context of the totality of the circumstances, which includes all of the factors, including, yes, Ms. Garza was on the front porch. She was gone. But how the officers got into the house, what happened once they got into the house, what they saw both downstairs, which they arrested Mr. Dexborn and took him away. He was gone. And then they continued to do searches. So you stop at that point. You just stop at that point. Fine. That's fine. Yeah. That's fine. But where does it get you in your argument? That's what I don't understand. The point is the search warrant affidavit was based on not only what happened in terms of Ms. Garza, but it included the observations, at least some of them that were made upstairs. It included the interrogations of Mr. Dex. Let me ask this question. Did you challenge? You're the trial attorney. Yes. Did you challenge in the court below the observations that were made that were contained in the search warrant or given at the trial by the officers as to what they saw outside the house, on the porch, and inside on the first level? That they didn't see, they said that they saw a dish with some cocaine in it or something in it. They said they saw the person lying on the porch. They said that the defendant said a number of things. Were all those challenged? The entry into the premises was challenged. Challenged in that he, in other words, he said he didn't give his consent. That's correct. I see. That was litigated. The issue concerning the plate itself was not challenged. The entry to the upstairs was challenged. The defendant's two interviews were challenged. Well, okay. You may want to shift to causation because I'm a ---- Okay. Thank you, Your Honor. On the issue ---- Because I'd like to hear something. I mean, I don't want to cut off a line of questioning, but it sounds like you're pushing a rope uphill. I'm seeing the light here, so to speak. In terms of the sentencing aspect, the defendant's position is that he pleaded guilty to an importation. And that by the court imposing the enhancement for death, that was improper. Not because Judge Aiken didn't spend adequate time or didn't give adequate consideration, because obviously from the record, she spent a lot of time and energy, and we all did a lot of work on this case. But the problem is, based on what she said in her statement at sentencing, it appeared that she didn't believe she had any choice but to impose the death enhancement pursuant to the guidelines. She said, I can't in intellectual honesty do anything but this. Now, she did a lot of other positive things for Mr. Deeks. She didn't impose the obstruction for justice, didn't impose the firearms enhancement, and she went down below the guidelines range based on the 3553A factors. The problem is, with having a strict liability provision like this, Mr. Deeks must be allowed his apprendee rights because it's bringing in facts that were not part of his change of plea, the basis for his plea, or the charge itself. And in addition, there's got to be a standard that gives him the whole panoply of rights, beyond a reasonable doubt standard, and all of the things that would be guaranteed pursuant to that. So I reserve the rest of my time with the Court's permission. Thank you. Okay, thank you. Ms. Shoemaker? May it please the Court, I'm Jane Shoemaker, representing the United States. To address the Court's concerns about assuming, if the Court were to find that the protective sweep were not justified, whether or not the search warrant affidavit still supports the issuance of the warrant, the record amply demonstrates that it would. There was still probable cause if the Court redacted the one paragraph in the eight-page affidavit that included facts from the sweep that was conducted after the defendant's arrest. Can you address, because the district judge mentioned not only a danger to the officers, but preservation of evidence. Where does preservation of evidence, or preventing destruction of evidence, where is there anything in this record to suggest, A, that that's a factual ground, much less a legal ground? Well, from a factual standpoint, Your Honor, when the police went into the house and they found the cocaine and some of the paraphernalia that was on the table, the defendant initially denied, or immediately denied that the drugs were his. He also indicated that he had been on vacation for several weeks and that somebody else had been staying in the house for the last couple of weeks, which gives rise to the suggestion that somebody else may be in the house. And from the overall facts that were presented at that point that the officers had knowledge of, there was a basis to believe that the defendant had provided the drugs to the victim before she collapsed. The police indicated that they had seen fresh track marks on her arm when they entered into the house. There was this bizarre circumstance where the defendant waited for ten minutes to call 911 to explain that she had collapsed at the house. They come in and they find the drugs that were in the house. There was a card, like a telephone card with the defendant's name on it that was there with the drugs. There was a cap to a syringe that was found on the table. I understand that, but where's the, you know, it takes somebody, he's in custody, right? That's correct, Your Honor. So where's the destruction of evidence coming in? Well, because there was evidence of drug usage in the house and there was evidence suggesting that the defendant had supplied the drugs to the victim, the police officers could believe that he is a drug dealer, and because he had said that he had not been there for the last several weeks and that somebody else was staying at the house and that the drugs weren't his. They didn't have the house sealed off as a crime scene? Initially, the officers, they did ultimately do that, Your Honor. Not immediately? When they left the house to go apply for the search warrant and after the defendant had been taken away, they did post a statement. You're focusing on one fact. You're saying since he said that other people had used the house, that formed the justification for conducting a protective search of the premises. We're trying to draw a line, if there's a line to be drawn, between why don't you do it in every case versus this case, because you have to have articulable reasons for believing that somebody else is in the house because you can leave the house, seal the house and so forth. If somebody's upstairs flushing stuff down the toilet, then that's a problem. So you go and you take a look and see whether anybody else is around, okay? But you have to have a reason to believe, and the court has to say, why the court believes that other people were in the house, to which you point to the fact that the defendant said other people had used the house. Is there anything other than that, that statement, that would provide a justification for conducting a search upstairs? I think the only facts on the record in this case that would support a specific factual basis to believe that somebody else might be upstairs who could destroy evidence when they left to go get the warrant is the combination of the statement that other people had been staying in the house for the last couple of weeks and, number two, that the defendant was denying that the drugs that were in the house were his. So that's a bit ironic, isn't it? In other words, one we accept is true and the other we accept is false. He said two things, one of which you say is false and therefore that provided the justification for accepting the other one is true. I don't know, but that's what you're saying, two statements, one of which was false. And the nature of the statements. It can be looked at. And nothing else, right? Nothing else. There's nothing else around. There are no other facts, Your Honor. And is there any case that you can cite that says it's okay to search for destruction of evidence absent danger to the officers? Well, I believe that the cases that deal with it, put it under the label as a protective sweep, do not talk about preserving the evidence. However, it seems that the justification here when Judge Aiken found that it was reasonably necessary for the officers to search the upstairs was it seemed that it was merging both. She said it. That's why I've been looking for the legal authority. I understand protection of officers. You don't have a case that says absent threat to the officers. There's some independent ground now that you can go through a house to prevent destruction of evidence. Because a house, unless it's sealed, can always be entered. Somebody could come in and flush stuff down the toilets and all of that. But if there's nobody in the house and the house can be sealed off, we're not creating some notion in this case that it's okay to prevent destruction of evidence as a ground for a sweep of an entire residence. I think generally when that is the ground for justifying the search, that generally falls under exigent circumstances. Okay. That's what I thought. All right. Thank you. But assuming that the police officers did not. So can you get to the sentencing? I'm sorry. Will you go to the sentencing? Because, I mean, I think we understand the argument about if you take the sentence out, that paragraph out, there's enough in there. That's your view. Thank you, Your Honor. Yes, with regard to the sentencing guideline calculation, I think Judge Aiken was correct that she did need to apply the death enhancement in this case because the medical examiner had certified acute cocaine intoxication as the cause of death. I think that's a different argument. They're saying that the court looked at it almost as a matter of strict liability. And that being the case, counsel said it in the last 30 seconds, so she wasn't able to flesh it out. But she's saying that all sorts of other procedural processes would kick in under Apprendi and it would have to be separately proven and so forth and so on. What about that? I don't think Apprendi comes into play in this case, Your Honor, because the penalty in this case with the enhancement did not increase the statutory maximum penalty that the defendant was facing. The guidelines or, excuse me, the statutory penalty in this case was a mandatory minimum of five years up to 40 years imprisonment. And under the sentencing guideline calculation, even with the enhancement, it was still underneath the 40 years. So I don't think that Apprendi is an issue in this case. The court is bound to apply the guidelines as a starting point in the sentencing process. The guidelines say that if the offense of conviction caused the death, and we have a medical examiner's certificate saying that acute cocaine intoxication was the cause of death in this case, Judge Aiken said she couldn't see a way to go around that and that that enhancement had to apply as a starting point. Then, of course, she was able to and did reduce the sentence to the sentence that she thought was reasonable and appropriate in the case under 3553 and also not accepting some of the guideline enhancements that probation had recommended in this case. So I think what the court did was the correct thing to do in this case. The sentencing guidelines did require the court to apply the enhancement, which is within the statutory maximum penalty and was an appropriate sentence in this case. So unless the court has any other questions. And she could have applied, yes, the court could have had a lesser sentence. Is that right? Under 3553, the court could sentence the defendant to whatever sentence the court felt was reasonable. Provided that it at least meets the mandatory minimum. Yes, yes, Your Honor. Okay. Thank you, Your Honor. Thank you very much. Ms. McRae, you've saved about three minutes. I was close, wasn't I? You were close. Judge Beyer, let me try to flesh out the issue concerning why Apprendi applies. And I knew whatever I brought up with me in my briefcase and everything, I would not have one of the things that I needed. But the argument is this. I know that and I brought it up in the sentencing memorandum that was filed in this case. There is case law in the circuit that says when the sentence is going to be vastly increased, quadrupled, for example, as it would be in this case, that then the court has to apply a greater standard of proof. Yes. That's not Apprendi. That's a clear and convincing evidence standard if you're going to have a disproportionate increase in the sentence. Exactly. You're right, Your Honor. However, Apprendi would still apply because the court is relying in making its determination on the causation concerning death on facts that were not part of the charge, nor the facts that the defendant stated as part of his plea in pleading guilty to the charge, nor the court's acceptance of that plea. So there was no finding by a trier of facts in what the charge was, the importation, which supported the court then going and making a finding of the causation of death and imposing the enhancement. And there was – and so, actually, I did the first part of my argument first. The detriment, obviously, to the defendant is that his sentence was basically – would be quadrupled if the court had accepted the recommendation. I'm sorry. I'm missing. This Court's finding found that the defendant admitted that he imported approximately four pounds of cocaine. At his home four days later, he provided Garza with one gram of this cocaine for her personal use, and she died that night. I mean, what's the issue? That was not his plea, Your Honor. His plea was the importation of the 3.6 pounds of cocaine. That's what he was charged with, and that's what he pleaded to. And not that she had taken any of the cocaine which had been imported by him. That's correct. That was not part of the plea itself. That was what came up at sentencing. And at sentencing, he contests having given it to her? He says, I didn't give it to her. I'm sorry. And at sentencing, he contests? He says, I didn't give it to her? No. He did not contest that at sentencing. It wasn't a reasonable inference. I mean, couldn't the jury – excuse me, the court find that this was the cocaine that caused her illness and subsequent death? Not her illness. The court may remember that we had a bifurcated sentencing hearing, an extremely lengthy sentencing hearing in September and then took up again in November. One of the issues in this case was that there was no autopsy performed. Another issue was that the cause of death remained pending with the medical examiner for years. And her own physician had characterized her as a slow suicide. She had a number of problems. Now, this may have been the straw that broke the proverbial camel's back, but we can't tell that, and that's one of the problems. Okay. Thank you. Thank you. Thank both sides for a very useful argument. United States v. Deeks is now submitted for decision. The next case on the argument calendar, the penultimate case, Principal Life Insurance v. Robbins.
judges: Fletcher, Fisher, Breyer